**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| PUI AUDIO, INC., : | |
| : | |
| Plaintiff, : | Case No. 3:21-cv-284 |
| : | |
| v. : | Judge Thomas M. Rose |
| : | |
| MICHAEL VAN DEN BROEK, *et al.*, : | |
| : | |
| Defendants. : | |

**ENTRY AND ORDER GRANTING PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER (DOC. NO. 4) AND ISSUING A
TEMPORARY RESTRAINING ORDER**

Pending before the Court is the Motion for Temporary Restraining Order (Doc. No. 4) (the "TRO Motion") filed by Plaintiff PUI Audio, Inc. ("PUI"). Defendant Michael Van Den Broek ("Van Den Broek") is alleged to be a former employee of PUI. (Doc. No. 1 (Verified Complaint) at PageID 1.) The other defendant in this case—MISCO, Inc. ("MISCO")—is alleged to be a direct competitor of PUI. (*Id.* at PageID 2.) PUI generally alleges that Van Den Broek left its employment after approximately six years, has become affiliated in some capacity with MISCO, has misappropriated PUI trade secrets, and has violated various provisions of his Employment Agreement with PUI (e.g., non-compete, non-solicitation, and non-disclosure provisions). (*See generally* Docs. 1, 4.) PUI also generally alleges that MISCO intentionally interfered with that employment agreement for its own benefit. (*Id.*)

PUI filed the TRO Motion on October 18, 2021. Van Den Broek and MISCO (collectively, "Defendants") received notice of the TRO Motion. On October 19, 2021, Defendants' counsel

1

transmitted to PUI's counsel and the Court a written response to the TRO Motion.[1] Later that day, in accordance with S.D. Ohio Civ. R. 65.1(a), the Court held a telephonic preliminary conference with counsel for PUI, counsel for Defendants, Van Den Broek, and MISCO's President (Dan Digre). For the reasons discussed below, and in accordance with Federal Rule of Civil Procedure 65, the Court **GRANTS** the TRO Motion (although not with the same terms proposed by PUI) and **ISSUES** a temporary restraining order with its terms specifically stated in this Order's CONCLUSION section.

## I. BACKGROUND

According to the Verified Complaint, Van Den Broek was hired by PUI's predecessor, Projects Unlimited, Inc., in January 2015 as an applications engineer. (Doc. No. 1 at PageID 3.) As a condition of his employment, Van Den Broek executed an agreement (the "Agreement"), which is governed by Ohio law. (*Id.*; Doc. No. 1-1.) Within the Agreement are provisions concerning confidentiality; non-competition; non-solicitation of customers or clients; non-solicitation of employees; return of the employer's property; survivorship of obligations; injunctive relief; governing law; and assignment. (Doc. No. 1-1 at PageID 32-35.) Regarding assignment, the Agreement expressly states:

> I, Michael Van Den Broek (hereinafter 'the Employee'), in consideration for beginning or continuing employment with Projects Unlimited, Inc., and/or any successor, assign, or subsidiary thereof (hereinafter 'the Employer'), hereby agree to the following terms of employment: …
>
> 16. **Assignment** The Employee agrees that the Employer's rights under this Agreement are freely transferable and assignable, and shall inure to the benefit of any successor or assign of the Employer or any other entity to which the Employer so designates. …

(*Id.* at PageID 32, 34.) PUI purchased Projects Unlimited Inc. and assumed the Agreement's

---

[1] Defendants subsequently filed that response. (Doc. No. 7.)

benefits and rights given to "the Employer." (*Id.* at PageID 3.) Additionally, the Agreement's "Survivorship of Obligations" provision provides that, with one exception not at issue here, Van Den Broek's obligations under the Agreement continue to apply after he is no longer employed by PUI. (*Id.* at PageID 33.)

According to the Verified Complaint, "PUI is a national leader in the development, manufacture and sale of a wide variety of high-quality audio components and innovative custom audio solutions throughout the United States and internationally." (Doc. No. 1 at PageID 2.) As an applications engineer with PUI, Van Den Broek "was responsible for developing a panoply of PUI's product lines," which "were marketed and sold throughout the United States." (*Id.* at PageID 4.) "He also had key client contact with regard to these lines, and was in charge of all of PUI's product lines, including development, marketing, pricing, strategy and client development." (*Id.*) For his services, Van Den Broek was compensated "with six-figure earnings." (*Id.*) "In his role, Van Den Broek received extensive training on PUI product lines, features, benefits, innovations and strategy on how to sell the PUI line versus the competition." (*Id.*) "He was one of a handful of individuals at the company with ultimate access to … PUI's most confidential, proprietary and/or trade secret information, including information on product development and launches, client contacts, client projects, bids, pricing, margins, contract terms, marketing and business development strategies, growth opportunities, competitive strengths and weaknesses, manufacturing costs, and a wide variety of other information." (*Id.*) PUI undertook efforts to maintain the secrecy of its trade secrets and other confidential business information. (*Id.* at PageID 3.)

PUI asserts that MISCO is a direct competitor of PUI. (Doc. No. 1 at PageID 2.) On April 13, 2021, Van Den Broek announced to PUI his intention to resign and become employed by

3

MISCO. (*Id.* at PageID 5.) In response, PUI's CEO (Paul Spain) explained to Van Den Broek that such employment with MISCO was prohibited under the terms of the Agreement. (*Id.*) Additionally, "[i]n an effort to underscore Van Den Broek's importance to PUI, Spain offered to promote Van Den Broek to the position of Director of Engineering and Product Development," as well as "increase his annual bonus opportunity." (*Id.* at PageID 5-6.) Van Den Broek accepted these incentives to remain at PUI, and PUI "significantly increased the scope of his responsibilities." (*Id.* at PageID 6.)

However, "[a] mere four months after that promotion, on August 18, 2021, Van Den Broek again tendered his resignation from PUI; this time claiming that he was leaving to become a 'consultant.'" (Doc. No. 1 at PageID 6.) The following day, Van Den Broek exited PUI. (*Id.*) On August 26, 2021, PUI's legal counsel wrote to Van Den Broek to remind him of his post-employment obligations under the Agreement (the "August 26 Correspondence"). (*Id.*) MISCO was copied on the August 26 Correspondence. (*Id.*)

In late September 2021, PUI received "information via emails inadvertently sent to Van Den Broek's former PUI email address." (Doc. No. 1 at PageID 6.) Those emails included multiple receipts from UBER reflecting that Van Den Broek had traveled to MISCO on numerous occasions, as well as an email from a MISCO sales representative indicating a time when Van Den Broek would be at MISCO and available to meet with a customer. (*Id.* at PageID 6-7.) This information alarmed PUI and caused it to commence a (still ongoing) forensic review. (*Id.*) During this review, PUI apparently discovered "a Dropbox folder on Van Den Broek's PUI computer was last accessed at 11:07 p.m. on August 17, 2021"—very late on the day before Van Den Broek submitted his resignation to PUI. (*Id.* at PageID 7.) That folder is empty and the Dropbox account was last accessed on the day Van Den Broek resigned. (*Id.*) According to PUI,

4

it appears "that Van Den Broek may have uploaded PUI confidential, proprietary and/or trade secret files the night before his resignation using the desktop version of Dropbox on his PUI computer, and then deleted the desktop version before again accessing Dropbox via the cloud version." (*Id.*)

In its Verified Complaint, PUI brings claims for breach of contract, misappropriation of trade secrets under Ohio's Uniform Trade Secrets Act (Ohio Rev. Code. § 1333.61 *et seq.*) ("OUTSA"), misappropriation of trade secrets under the federal Defend Trade Secrets Act (18 U.S.C. § 1836, *et seq.*) ("DTSA"), and tortious interference with contract. (Doc. No. 1.)

In their response to the TRO Motion, the Defendants acknowledged that Van Den Broek received the August 26 Correspondence and that Van Den Broek had recently "joined" MISCO. (Doc. Nos. 7, 7-1.) During the October 19, 2021 telephonic preliminary conference with the Court, PUI's counsel stated that she had discovered additional UBER receipts reflecting Van Den Broek's travels to MISCO, that MISCO sells some products to two of PUI's largest distributors, and that MISCO could take a lot of PUI's business away. During the same conference, Defendants' counsel stated that he had promptly responded to the August 26 Correspondence, that he received no response back from PUI's counsel despite sending his response on September 1, and that the Defendants are abiding by the Agreement because there is no competition between PUI and MISCO (MISCO does not view PUI as a competitor).[2] Defendants' counsel acknowledged that Van Den Broek is a MISCO employee now, but stated that Van Der Broek does not have any of PUI's confidential information and has no intention of soliciting PUI's customers. Defendants' counsel argued that there was a delay in PUI filing the TRO Motion, which should mitigate any threat of immediate and irreparable injury. He suggested that, rather than proceed with the

---

[2] PUI's counsel denied having previously seen the response to the August 26 Correspondence.

5

litigation, the Court enter a 60-day stay during which counsel could attempt to find a resolution.

## II. ANALYSIS

"Under Federal Rule of Civil Procedure 65, injunctive relief is an extraordinary remedy, the purpose of which is to preserve the status quo." *AK Steel Corp. v. Miskovich*, No. 1:14-cv-174, 2014 U.S. Dist. LEXIS 197389, 2014 WL 11881030, at *2 (S.D. Ohio Mar. 3, 2014). In determining whether to issue a temporary restraining order ("TRO"), the Court considers the following factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *N.E. Ohio Coal. for the Homeless and Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* "For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the" injunction. *Id.* "The moving party bears the burden of justifying issuance of an injunction." *Burton v. Kettering Adventist Health Care*, No. 3:20-cv-209, 2020 U.S. Dist. LEXIS 106411, 2020 WL 3265526, at *1 (S.D. Ohio June 17, 2020) (internal quotation marks omitted) (denying motion for a TRO).

### A. Likelihood of Success on the Merits

Regarding the first factor, the Court finds that, at this stage of the litigation and based on what has been presented, PUI has shown that it likely will succeed on the merits of its claims.[3]

The Court begins by considering the breach of contract claims. "Under Ohio law, the

---

[3] This finding, as well as the Court's other findings in this Order, apply only to the TRO Motion. The Court would newly consider each of the factors in connection with any motion for a preliminary injunction following a hearing on such a motion. Fed. R. Civ. P. 65.

6

elements of a breach of contract claim are: (1) the existence of a binding contract or agreement; (2) the non-breaching party's performance of its contractual obligations; (3) the other party's failure to fulfill its contractual obligations without legal excuse; and (4) the non-breaching party suffered damages as a result of that failure." *List Indus., Inc. v. Umina*, No. 3:18-cv-199, 2021 U.S. Dist. LEXIS 128716, 2021 WL 2916967, at *14 (S.D. Ohio July 12, 2021) (citing Ohio law). In their response, Defendants argue that the Agreement is not with PUI but with Projects Unlimited, Inc. (Doc. No. 7 at PageID 71.) However, there is information to support that PUI purchased Projects Unlimited Inc. and assumed the Agreement's benefits and rights given to "the Employer" under the Agreement. (Doc. No. 1 at PageID 3; Doc. No. 1-1 at PageID 32, 34.)

Defendants also argue that the Agreement's non-competition provision is "overbroad and unforeseeable [sic] to the extent it prohibits [Van Den Broek] from working in the field of his training and experience of two years nationwide." (Doc. No. 7 at PageID 71.) The Ohio Supreme Court has held that "a covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if it is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Raimonde v. Van Vlerah,* 325 N.E.2d 544, 547 (Ohio 1975). Among the factors properly considered in determining reasonableness of such restrictive covenants are: "the absence or presence of limitations as to time and space[;] whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the

employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment." *Id.* (alterations adopted; internal quotation marks omitted). "In determining the validity of a covenant or agreement in restraint of trade, each case must be decided on its own facts." *Id.* (internal quotation marks omitted).

The non-competition provision in the Agreement prohibits Van Den Broek (for a period of two years after termination from PUI) from "directly or indirectly … engag[ing] in a business enterprise in competition with" PUI. (Doc. No. 1-1 at PageID 32.) The Agreement limits the definition of "business enterprise in competition" with PUI to "an entity which manufactures, fabricates[,] sells or seeks to sell products or services of a similar nature to those manufactured, sold or offered by [PUI] to the same or similar customers." (*Id.*) The Agreement also states that Van Den Broek agrees that the non-compete provision applies nationwide and "acknowledges that [PUI's] competitors are located at various locations throughout the United States." (*Id.*) The non-solicitation provisions are likewise limited to a period of two years. (*Id.*) The Agreement also contains a "Return of The Employer Property" provision that requires Van Den Broek to promptly deliver all PUI business material that he has to PUI upon terminating his employment, as well as a "Confidentiality" provision that generally prohibits him from disclosing or using PUI's "confidential information" as defined in that provision unless PUI provides consent. (*Id.* at PageID 32-33.)

Based on what has been presented and argued, and while some of the restrictions may ultimately be determined to be overly broad (potentially so as to require modification), the Court makes a preliminary finding that these are reasonable restrictive covenants given PUI's business interests. *Raimonde,* 325 N.E.2d at 547; *Handel's Enters., Inc. v. Schulenburg*, No. 4:18-cv-508,

8

2018 U.S. Dist. LEXIS 104851, 2018 WL 3077756, at *5 (N.D. Ohio June 22, 2018) ("[c]ourts within Ohio have consistently held that non-compete agreements with two-year durations are reasonable and enforceable"); *Try Hours, Inc. v. Douville*, 2013-Ohio-53, 985 N.E.2d 955, 965-66 (Ohio Ct. App. 2013) (upholding nationwide non-compete provision in expedited freight industry); *AK Steel*, 2014 WL 11881030, at *3 (lack of geographical restriction for non-compete was reasonable given the nature of the industry; explaining that "[t]he disclosure of pricing, customer lists, and other confidential information to competitors presents significant risks for a business in this highly competitive industry"). PUI has a legitimate interest in protecting from competitors the type of information concerning strategic decision-making, manufacturing costs, client contacts, etc. to which Van Den Broek had access at PUI (*see* Doc. No. 1 at PageID 4). *AK Steel*, 2014 WL 11881030, at *3. PUI also has a legitimate interest in protecting its relationships and goodwill with its customers, as well as in preventing a former employee from soliciting sales from those customers with which he or she had a relationship prior to departure. *Id.* Although the restrictions may require Van Den Broek to endure some hardship, the preliminary determination is that they are narrow enough in scope to avoid imposing an undue hardship. *AK Steel*, 2014 WL 11881030, at *4 ("[a]ll non-competition agreements impose some hardship on the employee who leaves the employer; that is an inherent aspect of such agreements"). The Agreement does not appear to restrain competition generally or preclude Van Den Broek from all gainful employment, given the non-compete provision's relatively limited scope of "engag[ing] in a business enterprise in competition with" PUI, as defined in the Agreement (Doc. No. 1-1 at PageID 32). The non-compete provision also does not appear to be "injurious to the public." *Raimonde*, 325 N.E.2d at 547.

Defendants also argue that PUI "is not and never has been a competitor of" MISCO. (Doc.

No. 7 at PageID 70.) While the Verified Complaint asserts that PUI and MISCO are "direct competitors," it is not necessary that they are direct competitors for MISCO to qualify as a "business enterprise in competition with" PUI under the Agreement. (Doc. No. 1-1 at PageID 32.) Although the evidence presented at this extremely early stage of the litigation concerning the extent and scope of competition between PUI and MISCO is quite limited, there is sufficient evidence to support that MISCO is a "business enterprise in competition with" PUI under the Agreement. *See also Avery Dennison Corp. v. Kitsonas*, 118 F. Supp. 2d 848, 853 (S.D. Ohio 2000) ("[o]ne corporation does not need to manufacture identical products to be in direct competition with another corporation").

Additionally, based on the information presented and the parties' arguments to date, the Court makes a preliminary finding that PUI likely will succeed on its breach of contract claims. The information supports that PUI likely will be able to show that the Agreement is a binding contract, PUI has performed its contractual obligations, Van Den Broek has failed to fulfill his contractual obligations without legal excuse (for example, by "directly or indirectly … engag[ing] in a business enterprise in competition with" PUI through his employment with MISCO), and PUI suffered damages as a result. *List Indus.*, 2021 WL 2916967, at *14 (setting forth elements of a breach of contract claim under Ohio law); *AK Steel*, 2014 WL 11881030, at *4 (granting a TRO where information before the Court supported that former employee breached agreement by virtue of employment with competitor).

Next, the Court addresses the tortious interference with contract claims. Under Ohio law, the elements of such a claim are: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 1999-

10

Ohio-260, 707 N.E.2d 853, 858 (Ohio 1999). The information currently before the Court supports that PUI likely will be able to show the existence of the Agreement, MISCO's knowledge of the Agreement (including at least some of its restrictive covenants), MISCO's intentional procurement of the Agreement's breach by (at least) hiring and continuing to employ Van Den Broek despite that knowledge, a lack of justification, and that PUI suffered damages as a result. *Fred Siegel*, 707 N.E.2d at 858 (setting forth elements of a tortious interference with contract claim under Ohio law); *AK Steel*, 2014 WL 11881030, at *6 (movant met its burden for issuance of TRO in a case involving a claim for tortious interference with contract).

Finally, regarding PUI's trade secret claims, Ohio law allows a court to enjoin "[a]ctual or threatened misappropriation." Ohio Rev. Code § 1333.62(A); *see also Dexxon Digital Storage, Inc. v. Haenszel*, 2005-Ohio-3187, 832 N.E.2d 62, 68 (Ohio Ct. App. 2005) ("the issuance of an injunction does not hinge on [movant] proving that the [non-movant] used the trade secrets, as threatened misappropriation of a trade secret is sufficient to allow the trial court to enjoin future use"). Among other things, the OUTSA defines "misappropriation" to include "[d]isclosure or use of a trade secret[4] of another without the express or implied consent of the other person by a person who … [a]t the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person

---

[4] "'Trade secret' means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following: (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use [and] (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ohio Rev. Code § 1333.61(D); *see also State ex rel. Besser v. Ohio State Univ.*, 2000-Ohio-207, 732 N.E.2d 373, 377-78 (Ohio 2000) (setting forth factors in analyzing a trade secret claim).

seeking relief to maintain its secrecy or limit its use." Ohio Rev. Code. § 1333.61(B)(2)(b). Similar to the OUTSA, under the federal DTSA, a Court may grant an injunction to prevent any actual or threatened "misappropriation" of a "trade secret," as defined in that act.[5] *See* 18 U.S.C. § 1836(b)(1), (b)(3)(A); 18 U.S.C. § 1839(3), (5).

Additionally, it is worth noting that Ohio law recognizes the "inevitable-disclosure rule." *See, e.g., Dexxon Digital Storage*, 832 N.E.2d at 68; *Procter & Gamble Co. v. Stoneham*, 747 N.E.2d 268, 278-79 (Ohio Ct. App. 2000); *AK Steel*, 2014 WL 11881030, at *4. According to that rule, "a threat of harm warranting injunctive relief can be shown by facts establishing that an employee with detailed and comprehensive knowledge of an employer's trade secrets and confidential information has begun employment with a competitor of the former employer in a position that is substantially similar to the position held during the former employment." *Dexxon Digital Storage*, 832 N.E.2d at 68 (internal quotation marks omitted). The underlying rationale for that rule includes that "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well intentioned the effort may be to do so." *Id.* (internal quotation marks omitted).

Here, based on the information presented and the parties' arguments to date, the Court makes a preliminary finding that PUI likely will succeed on its trade secrets claims. The Agreement, which Van Der Broek executed as a condition of his employment, includes a provision prohibiting him from disclosing or using PUI's confidential information without its prior written consent (Doc. No. 1-1 at PageID 32). *See List Indus.*, 2021 WL 2916967, at *13 (denying summary judgment to defendant former employee on misappropriation of trade secrets claim involving an employment agreement that included a non-disclosure provision). It is undisputed

---

[5] The definitions of "trade secret" and "misappropriation" in the OUTSA and the DTSA are similar. *Compare* Ohio Rev. Code § 1333.61(B), (D) *with* 18 U.S.C. § 1839(3), (5).

that PUI has not provided such consent or any consent for disclosure whatsoever. It also is undisputed that PUI's products are sold throughout the United States and that Van Den Broek held a key position with PUI and was exposed to proprietary information while he was employed there for the past six years. Certainly at least some of that information "may constitute trade secrets under Ohio law" and/or the DTSA, and "the facts as known at this time do not preclude a finding of threatened misappropriation such that a temporary restraining order to preclude future misappropriation is appropriate." *AK Steel*, 2014 WL 11881030, at *6. The evidence at this very early stage of litigation supports that there is (at least) a threat of misappropriation given the circumstances and Van Den Broek's employment with MISCO. Ohio Rev. Code § 1333.62(A); 18 U.S.C. § 1836(b)(3)(A); *see also Dexxon Digital Storage*, 832 N.E.2d at 69 (finding error in trial court's denial of preliminary injunction because defendant employees would not be able "to compartmentalize their knowledge of [plaintiff's] trade secrets and confidential information and to refrain from using that information in their jobs at" a competitor); *AK Steel*, 2014 WL 11881030, at *4 (granting TRO and finding that "there is a risk that confidential or proprietary information of [plaintiff former employer] that has been acquired by [defendant former employee] could be used or disclosed—either purposefully or inadvertently—for the benefit of" defendant former employee or defendant new employer).

### B. **Irreparable Injury**

Regarding the second factor, the Court finds that PUI has shown that it would suffer irreparable injury without issuance of a temporary restraining order. Generally, injury is irreparable if it cannot be fully compensable by monetary damages. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). "[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate." *Id.* Thus, a "likely interference with customer relationships resulting from

13

the breach of a non-compete agreement," the "loss of customer goodwill," and the "loss of fair competition" all may qualify as irreparable injuries. *Id.*; *see also AK Steel*, 2014 WL 11881030, at *4 ("Ohio courts that have considered non-compete agreements have recognized that even a substantial threat of harm is a sufficient basis upon which to grant injunctive relief").

Here, based on the information presented and the parties' arguments to date, PUI has shown that it likely would suffer these types of injuries without injunctive relief to enforce the restrictive covenants in the Agreement and prohibit the Defendants' disclosure or use of PUI's trade secrets. *Avery Dennison*, 118 F. Supp. 2d at 854-55 (finding that failure to enforce the restrictive covenant against former employee would present irreparable injury to plaintiff). Furthermore, the Agreement signed by Van Den Broek contains an injunctive relief provision that states: "the Employee agrees that a breach of any of the promises contained in [the confidentiality, non-competition, non-solicitation of customers or clients, non-solicitation of employees, return of the Employer's property, and other provisions] cannot be wholly compensated for by monetary damages and that any remedy at law would be inadequate." (Doc. No. 1-1 at PageID 34.)

### C. Substantial Harm to Others

Regarding the third factor, the Court finds that, while there may be some harm to Van Den Broek and/or MISCO, issuance of the temporary restraining order would not cause them substantial harm. The acts restrained by this Order essentially are those that would be prohibited by the Agreement or by trade secret law. *See Avery Dennison*, 118 F. Supp. 2d at 855 (finding that defendant corporation would not be harmed by injunction, "as it has no right to the information in [defendant employee's] possession" and "[a]ny harm to [defendant employee] would be as a direct result of his own actions" given that he was aware of the restrictive covenants yet chose to accept employment with defendant corporation). Furthermore, the acts restrained by this Order are ones that Defendants' counsel has said are not (and have not) been committed by Defendants.

14

(*See, e.g.,* Doc. No. 7 at PageID 71 (Defendants asserting that they "have no interest or intention to solicit customers of [PUI] or use any of its claimed 'confidential information' in any manner").) Even if the TRO precludes Van Den Broek from continuing his employment with MISCO (and deprives MISCO of its employee) for its duration, he is not precluded from employment that conforms with the Agreement and MISCO could have another employee cover his position in the interim. *See AK Steel*, 2014 WL 11881030, at *5. Finally, the acts required of Defendants by this Order regarding preservation are acts that are relatively routine in litigation that involves alleged misappropriation of trade secrets.

### D. Public Interest

Regarding the fourth factor, the Court finds that the public interest would be served by issuing the temporary restraining order. *Avery Dennison*, 118 F. Supp. 2d at 855 ("valid contracts are the lynchpin of all commercial activity in society, and therefore, they must be honored," and "the public interest is served by discouraging practices aimed at surreptitiously acquiring trade secrets, by prohibiting misappropriation of trade secrets, and by condemning the theft of clients through unfair competition"). While the Court recognizes that the public interest "also is served by ensuring that an individual's employment opportunities are not unnecessarily restrained" (*AK Steel*, 2014 WL 11881030, at *5), "the public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts." *Firstenergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 529 (6th Cir. 2013) (quoting *Nat'l Interstate Ins. Co. v. Perro*, 934 F. Supp. 883, 891 (N.D. Ohio 1996)). Indeed, the very existence of the DTSA and OUTSA demonstrate the public takes seriously the need to protect a company's hard-earned trade secrets. *See* 18 U.S.C. § 1836; Ohio Rev. Code § 1331.61.

### III. CONCLUSION

Having considered the four factors, the Court finds at this time that—when balanced

together—they weigh in favor of issuing a TRO and that PUI has satisfied its burden of justifying its issuance. This is despite the Court not finding that PUI has shown a "strong" likelihood of success of the merits. The Court notes that it did not adopt PUI's proposed order, which was significantly more restrictive and burdensome than this temporary restraining order. The Court recognizes that, as shown above, the ultimate success of PUI's claims will involve relatively intricate factual determinations.

The Court also notes that PUI completely failed to address in the TRO Motion the security requirement set forth in Federal Rule of Civil Procedure 65(c). Fed. R. Civ. P. 65(c) ("The court may issue a … temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained"). During the telephonic preliminary conference with the Court, no party suggested an appropriate amount for the security requirement. PUI argued that it is an established business and that there is no need for security, while Defendants argued that requiring PUI to post a bond would be appropriate. The Court finds that $5,000.00 is a proper amount for security pursuant to Rule 65(c) for purposes of this Order. PUI must tender that amount to the Clerk of Court as security.

The Court **GRANTS** the Plaintiff's Motion for Temporary Restraining Order (Doc. No. 9), although the Court does not grant all of the relief requested in the TRO Motion (*see id.* at PageID 61-62). The Court **ORDERS** the following pending further order or for 14 days from entry of this order (whichever is shorter):

> A. Van Den Broek, as well as any persons acting in concert with him, are hereby enjoined and restrained from directly or indirectly using, disclosing, copying, or transmitting PUI's confidential information (as defined in the Employment

    Agreement attached to the Verified Complaint as its Exhibit A) or trade secrets for any purpose (including, without limitation, to engage in competition with PUI or to solicit PUI's customers, clients, or employees);

B. Van Den Broek is required to abide by the terms of the Agreement attached to the Verified Complaint as its Exhibit A;

C. Van Den Broek, as well as any persons acting in concert with him, are required to preserve all originals, copies, or other reproductions in any form whatsoever, of any record or document containing, in whole or in part, PUI's confidential information (as defined in the Employment Agreement attached to the Verified Complaint as its Exhibit A) or trade secrets in their possession, custody, or control;

D. Until the time when a forensic image of them has been created by a licensed professional, Van Den Broek is required to preserve—and not delete anything from them or modify anything on them—the hard drive(s) of his personal computer(s); the hard drives of any other computer(s) he has used since January 1, 2020 that is in his possession, custody, or control; and all USB devices and thumb drives he has used since January 1, 2020 that are in his possession, custody, or control; and

E. In accordance with Federal Rule of Civil Procedure 65(d)(2), this Order binds the following who receive actual notice of it by personal service or otherwise: the parties; the parties' officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with the parties or the parties' officers, agents, servants, employees, and attorneys.

    The Court will hold an evidentiary hearing on **<u>Monday, November 1, 2021 at 10:00 a.m.</u>** to decide whether to extend, modify, or terminate this temporary restraining order. Finally, the

Court notes that, although PUI requests in its Verified Complaint that the Court enter a preliminary injunction (*see* Doc. No. 1 at PageID 1, 17), the local rules require a stand-alone motion be filed seeking such relief. S.D. Ohio Civ. R. 65.1(b) ("Motions for temporary restraining orders or preliminary injunctions shall be made in pleadings separate from the complaint and in accordance with this Rule").

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, October 21, 2021.

s/Thomas M. Rose

———————————————
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE